**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | | |
|---|---|---|
| GAVIN CLASS<br>15510 Old York Road<br>Monkton, Maryland 21111 | :<br>:<br>: | |
| Plaintiff, | : | |
| v. | : | Civil Action No. _____ |
| TOWSON UNIVERSITY<br>8000 York Road<br>Towson, Maryland 21252 | :<br>:<br>: | |
| Defendant, | : | |
| Serve On: | : | |
| Maryland Attorney General<br>Office of the Attorney General<br>200 Saint Paul Place, 20th Floor<br>Baltimore, Maryland 21202. | :<br><br>: | |

...oooOooo...

## COMPLAINT

NOW COMES Plaintiff Gavin Class, by and through his attorneys, Andrew M. Dansicker, Andreas Lundstedt and the Law Office of Andrew M. Dansicker, LLC, and Andrew Jiranek, Latane Mason and Jiranek & Company, P.A. and hereby files this Complaint for declaratory and injunctive relief against Defendant Towson University ("Towson" or the "University") for disability discrimination and failure to accommodate arising from Towson's well-intentioned, but misguided refusal to allow Mr. Class to play football for the Towson football team because of Mr. Class's disability (or Towson's false belief that he is disabled).

## THE PARTIES

1. Plaintiff Gavin Class is a citizen and resident of Baltimore County, Maryland who is a student at Towson. Mr. Class is a person with a disability who can play football with reasonable accommodations and is therefore entitled to protection pursuant to the relevant provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

2. Defendant Towson University is a constituent institution of the University System of Maryland. It is an agency of the State of Maryland. The University is subject to the relevant obligations of the ADA and the Rehabilitation Act as it receives federal funding in many forms, including, but not limited to, direct grants of assistance as well as student financial aid. On information and belief, the University annually signs a Certificate of Compliance certifying that it is in compliance with Section 504 of the Rehabilitation Act, a condition of receiving federal funds from the United States Department of Education.

## JURISDICTION AND VENUE

3. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343 because the case arises under the laws of the United States and seeks redress for civil rights violations under those laws, and personal jurisdiction is proper in this Court because the University is located in Maryland, transacts extensive business in Maryland and because the events giving rise to this litigation took place in Maryland.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims under the ADA and the Rehabilitation Act occurred in the District of Maryland, Northern Division.

## FACTS

### Mr. Class's Stellar Football Background And Tragic Collapse

5. Mr. Class attended St. Paul's School in Brooklandville, Maryland, where he was the captain of the football team and was named its Most Valuable Player.

6. After graduation in 2010, Mr. Class spent two years playing football as an offensive linesman for the University of Rochester, starring as a starter in only his sophomore year, when he was named Honorable Mention All-Liberty League player.

7. Eager to move up to a Division 1 school, Mr. Class transferred to Towson in 2012 and was redshirted during the 2012 football season.

8. On August 10, 2013, Mr. Class played starting right guard for Towson in an intrasquad scrimmage in preparation for the 2013 football season – his junior season.

9. Two days later, on August 12, 2013, Mr. Class collapsed from exertional heat stroke while running sprints with other linesmen near the end of practice at Johnny Unitas Stadium. He was unable to run, walk or stand. The temperature on that day was approximately 91 degrees, with 37% humidity, and a heat index of 102 degrees, and Mr. Class's body temperature was estimated at 111 degrees on the field – it was 108 degrees when he arrived at the hospital.

10. Mr. Class was transported to St. Joseph Medical Center and, within twenty four hours, with his liver failing, to the University of Maryland Medical Center ("UMMC"), Maryland Shock Trauma Center, where he was in a coma for nine days as he endured a liver transplant and various complications and surgical procedures – a total of fifteen surgeries – for pneumonia, lymphoma, shingles, appendicitis and infections.

11. At the time of his collapse, Mr. Class was using a prescribed medication, Adderall, which predisposed him to potential exertional heat stroke issues, because Adderall lowers the body's resistance to heat.

### Mr. Class's Remarkable Physical Recovery

12. After nearly two months, Mr. Class was released from the hospital and began a slow and grueling recovery process with a single goal in mind – to become the first person to come back from exertional heatstroke and a liver transplant to play football.

13. In the beginning, Mr. Class could barely stand for ten seconds and was unable to walk from his home to the mailbox, but through intensive physical therapy and training, Mr. Class slowly regained his skills and strength.

14. In January 2014, Mr. Class resumed his classes at Towson, and on January 5, 2014, Mr. Class attended the Towson football team's Football Championship Subdivision Title game in Frisco, Texas, where he addressed the team and told them that he had died, for a while, but that God had brought him back to be a part of the team's year.

15. During the next year, Mr. Class devoted himself to building his physical strength so that he would be able to compete for the Towson football team during the 2015 season.

16. By September 2014, Mr. Class was running 5k runs and engaging in non-contact drills in preparation for obtaining his reinstatement to the Towson football team for the 2015 football season.

17. In January 2015, the Baltimore Sun picked Mr. Class as one of ten athletes to watch during 2015, and in November 2014, the Baltimore Sun quoted Rob Ambrose, Towson's Head Football Coach, as stating, "Gavin might be the toughest damn kid I've ever seen. . . Will he come back? I believe he will. Should he come back? If for no other reason than to put on his helmet one more time, for one more play. He'll do it for validation."

18. As a result of his exertional heat stroke, Mr. Class suffers from two physical impairments and disabilities, liver transplant and enhanced propensity for exertional heat stroke, which can potentially reduce his ability to regulate body heat.

19. On February 6, 2015, Mr. Class underwent a rigorous heat tolerance testing regimen at the Korey Stringer Institute ("KSI") at the University of Connecticut, where the faculty are renowned for their research and expertise in the areas of heat and hydration, injury prevention and strength conditioning.

20. The heat tolerance testing at KSI – used by the United States Military and numerous large employers to determine a safe return to activity or work – takes place in an environmental chamber set to 104° with 40% humidity where Mr. Class exercised for two hours to observe how his body reacts to the heat.

21. Based on measures of heart rate and rectal temperature after the two-hour test, KSI determined that Mr. Class "successfully demonstrated the ability to thermoregulate as

5

expected at this intensity in these conditions. It is encouraging to see that you were able to handle the heat tolerance test given your specific history and timeline of events."

22. Mr. Class provided a copy of KSI's report to Towson University so that Towson would be aware that Mr. Class had been cleared by nationally-recognized experts to play football.

23. Moreover, with regards to his liver transplant, on January 9, 2015, Mr. Class's medical providers at UMMC, including Dr. Rolf N. Barth, Surgical Director of Liver Transplantation, and Dr. William Hutson, Medical Director of Liver Transplantation, stated that, "The Liver Transplant Team at the University of Maryland Medical Center has reviewed Gavin Class' medical history and current medical condition and concluded that he is at acceptable risk to play collegiate level football. We believe with appropriate abdominal padding and protection . . . he will be at extremely low risk for complications. We would further recommend temperature monitoring and continued compliance with his anti-rejection medications. These therapies should not interfere in any way with his ability to participate in collegiate sports."

**Towson's Refusal To Allow Mr. Class To Fully Participate In Towson's Football Program**

24. Based on the fact that Mr. Class was cleared to return to football by his treating physicians with regards to his liver transplant, and considering that he passed the recognized Heat Tolerance test administered by KSI – the same test used to clear members of the military to return to service – Mr. Class decided that he wanted to finish his football career by fully participating on the Towson football team for his senior year.

6

25. In reaching this decision, Mr. Class also took into account the fact that, in the wake of his collapse, Towson has taken significant steps to revamp its' practice and training regimen to greatly improve safety and prevent any future incidents of heatstroke. For example, Towson's practice and training now encompasses numerous rest periods, and the players are required to remove their helmets when running sprints to let the heat escape. It is also mandatory for players to sit in cold tubs for seven to ten minutes after practice, and the team has added a "slushie" machine to keep the core temperatures of the football players down during practice.

26. In addition, Mr. Class no longer is using Adderall or any other prescription drug that would increase his susceptibility to heat stroke. He does not have any of the other common traits that would predispose a person to heat strokes, such as a heart condition, lung disease, diabetes or obesity, nor does he use alcohol or smoke, and he is not elderly or pre-pubescent.

27. Finally, Mr. Class's doctors and the experts who tested him at KSI recommended certain protocols that they believed Mr. Class should observe in returning to football to minimize any risk of future heat stroke. For example, Mr. Class can use medical system that monitors his core body temperature with a pill containing a computer chip that would allow the Towson football team staff to wave a monitor in front of Mr. Class to obtain an instant reading of his core body temperature. In addition, the experts at KSI who tested Mr. Class recommended that: a) he follow a heat acclimatization protocol during the Spring; b) increase and monitor his fluid intake during practices and scrimmages; c) gradually increase the duration and frequency of workouts in the heat over the course of 2-4 weeks; and d) monitor his body temperature especially in warm

to hot environments, including specifically the first two weeks of pre-season workouts in August. These recommendations constitute reasonable accommodations which could be performed by Towson with minimal cost or disruption to the football program.

28. On March 19, 2015, undersigned counsel for Mr. Class requested that Towson provide reasonable accommodations to allow Mr. Class to fully participate in the University's football program for the 2015 football season.

29. On May 4, 2015, Towson sent a letter to counsel for Mr. Class stating that "while Mr. Class has made admirable strides in his recovery, he is unable to return to playing football safely and that no reasonable accommodation can be made to adequately protect him from potentially devastating health effects." (Towson Letter, dated May 4, 2015, attached hereto as Exh. 1).

30. Specifically, Towson stated that while they "acknowledge that the medical providers at the University of Maryland believe Mr. Class's liver transplant is not an impediment to returning to football so long as certain precautions are taken . . . Mr. Class's risk of another heat stroke . . . is another matter. . . The sports medicine professionals believe that the risk of serious injury or death as a result of another heat stroke is too great to clear Mr. Class to play."

31. Towson concluded by noting that "Mr. Class's risk of heat stroke is not capable of adequate prevention with any reasonable restriction or accommodation."

32. At no point did Towson communicate with Mr. Class the reasons why they believe that no reasonable accommodation can be made to allow Mr. Class to play football, conduct any examination or testing of Mr. Class, or engage in any interactive process with Mr.

8

Class regarding his ability to play football or the possibility that Towson could provide reasonable accommodations that might allow him to play football.

33. Towson's 2015 football season starts with practice sessions on August 1, 2015, and their first football game is on September 5, 2015 at East Carolina University.

## COUNT I – REHABILITATION ACT

### (Disability Discrimination And Failure To Accommodate)

34. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

35. Section 504 of the Rehabilitation Act mandates that "no otherwise qualified individual with a disability. . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

36. In other words, a public entity that receives federal funds violates the Rehabilitation Act when it excludes an individual with a disability, on the basis of the disability, from a benefit that the individual is otherwise qualified to receive.

37. Section 504 defines "program or activity" in pertinent part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of the State or local government that distributes such assistance and each such department and agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government. . . ."

38. Towson and the University System of Maryland receive federal grants, contracts, and other financial assistance, and their football program is a "program or activity" that thereby subjects themselves to the requirements of Section 504.

39. Mr. Class was invited to play for the Towson football team, is fully capable of performing as a football player for the Towson football team, and thus is a qualified individual entitled to the protections of the Rehabilitation Act.

40. Ms. Class became disabled – his prior heatstroke created a potential inability to regulate his body temperature and potential susceptibility to heat stroke that could substantially limit major life activities, including regulating body temperature, walking, standing and running, when he experiences an exertional heat stroke. Therefore, he is an individual with a disability under the Rehabilitation Act.

41. Towson has, solely by reason of Mr. Class's disability, excluded Mr. Class from fully participating in Towson's football program for the 2015 football season, and thereby excluded Mr. Class from participation in, denied him the benefits of, and otherwise discriminated against him in its facilities, services, programs or activities in violation of the Rehabilitation Act. Towson's violation of Section 504 and its regulations denies Mr. Class meaningful access to the public benefit of playing football for the University.

42. Towson's actions constitute intentional discrimination on the basis of disability in violation of the Rehabilitation Act, in that the University has: a) failed to maintain policies and procedures to ensure compliance with Section 504, specifically policies that provide equal access and effective communication to individuals with disabilities; b) failed to ensure that

communications with Mr. Class were as effective as communications with non-disabled persons; c) failed to engage in a reasonable, interactive process with regards to potential accommodation of Mr. Class's disability; d) failed to provide reasonable accommodations that would allow Mr. Class to play football with minimal risk of exertional heat stroke; and e) otherwise discriminated against Mr. Class.

43. As a result of Towson's actions, Mr. Class has suffered and continues to suffer irreparable harm because Towson's actions have caused him to receive unequal access to the University's activities and programs. Moreover, with only two years of eligibility left for Mr. Class to play football, Towson's refusal to reinstate Mr. Class will destroy his opportunity to realize his dream of playing Division I football.

44. As a result of Towson's wrongful conduct, Mr. Class is entitled to receive injunctive relief pursuant to Section 504, 29 U.S.C. § 794a.

45. As a result of Towson's wrongful conduct, Mr. Class is entitled to receive declaratory relief pursuant to Section 504, 29 U.S.C. § 794a.

WHEREFORE, Plaintiff Gavin Class respectfully requests that the Court: a) declare that Towson's decision not to reinstate Mr. Class to the Towson football team is discriminatory and violates Section 504 of the Rehabilitation Act; b) issue a preliminary and permanent injunction ordering the University to allow Mr. Class to fully participate in Towson's football program; c) issue a preliminary and permanent injunction ordering the University to provide reasonable accommodations to Mr. Class to fully participate in Towson's football program; and d) award reasonable attorneys' fees, costs and any and all other relief deemed appropriate by this Court.

## COUNT II – ADA

### (Disability Discrimination and Failure to Accommodate)

46. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

47. The ADA guarantees equal access for qualified individuals to the benefits of the services, programs or activities of a public entity.

48. Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."

49. Towson is a state school which is a public entity under Title II of the ADA and a constituent university of the University System of Maryland, also a public entity under Title II of the ADA.

50. Towson's Division I football program is part of the "services, programs or activities of a public entity" provided by Towson.

51. Ms. Class's inability to regulate his body temperature and susceptibility to heat stroke substantially limit major life activities, including regulating body temperature, walking, standing and running, when he experiences a heat stroke. Therefore, he is an individual with a disability under the ADA.

52. Mr. Class was invited to play for the Towson football team, is fully capable of performing as a football player for the Towson football team, and thus is a qualified individual entitled to the protections of the ADA.

53. Towson has failed to meet its obligations to provide Mr. Class with athletic opportunities that are equal to those provided to students without disabilities by excluding Mr. Class from the football team and denying him the benefits of, and otherwise discriminating against him in its facilities, services, programs and activities.

54. Towson's actions constitute intentional discrimination on the basis of disability in violation of the ADA, in that the University has: a) failed to maintain policies and procedures to ensure compliance with Title II, specifically policies that provide equal access and effective communication to individuals with disabilities; b) failed to ensure that communications with Mr. Class were as effective as communications with non-disabled persons; c) failed to engage in a reasonable, interactive process with regards to potential accommodation of Mr. Class's disability; d) failed to provide reasonable accommodations that would allow Mr. Class to play football with minimal risk of heat stroke; and e) otherwise discriminated against Mr. Class.

55. As a result of Towson's actions, Mr. Class has suffered and continues to suffer irreparable harm because Towson's actions have caused him to receive unequal access to the University's activities and programs. Moreover, with only two years of eligibility left for Mr. Class to play football, Towson's refusal to reinstate Mr. Class will destroy his opportunity to play Division I football.

56. As a result of Towson's actions, Mr. Class is entitled to injunctive relief pursuant to 42 U.S.C. § 12133.

57. As a result of Towson's actions, Mr. Class is entitled to declaratory relief pursuant to 42 U.S.C. § 12133.

WHEREFORE, Plaintiff Gavin Class respectfully requests that the Court: a) declare that Towson's decision not to reinstate Mr. Class to the Towson football team is discriminatory and violates Title II of the ADA; b) issue a preliminary and permanent injunction ordering the University to allow Mr. Class to fully participate in Towson's football program; c) issue a preliminary and permanent injunction ordering the University to provide reasonable accommodations to Mr. Class to fully participate in Towson's football program; and d) award reasonable attorneys' fees, costs and any and all other relief deemed appropriate by this Court.

## COUNT III – ADA AND REHABILITATION ACT

### (Regarded As Disabled Discrimination)

58. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

59. Towson perceives and regards Mr. Class's previous inability to regulate his body temperature and his prior heat stroke as actual or potential impairments creating a future risk of heat stroke and has therefore refused to reinstate him to Towson's football program because he is regarded as currently being predisposed to heat stroke. Therefore, he is regarded as disabled by Towson is, in fact, not susceptible to future heat stroke, and therefore does not have a legally-recognized disability.

60. Towson has failed to meet its obligations to provide Mr. Class with athletic opportunities that are equal to those provided to students without disabilities by excluding Mr. Class from the Towson football program and denying him the benefits of, and otherwise discriminating against him in its facilities, services, programs and activities by regarding him as disabled and unable to participate in the Towson football program.

61. Towson's actions of regarding Mr. Class as disabled constitute intentional discrimination on the basis of disability in violation of the ADA and Rehabilitation Act, in that Towson has regarded Mr. Class as a disabled individual even though he is not disabled, and discriminated against Mr. Class by refusing to allow Mr. Class to participate in Towson's football program based on baseless stereotypes and false perceptions that Mr. Class is disabled and unable to safely play football for Towson.

62. As a result of Towson's actions, Mr. Class has suffered and continues to suffer irreparable harm because Towson's actions have caused him to receive unequal access to Towson's activities and programs. Moreover, with only two years of eligibility left for Mr. Class to play football, Towson's refusal to reinstate Mr. Class will destroy his opportunity to play Division I football.

63. As a result of Towson's actions, Mr. Class is entitled to injunctive relief pursuant to 42 U.S.C. § 12133 and Section 504, 29 U.S.C. § 794a.

64. As a result of Towson's actions, Mr. Class is entitled to declaratory relief pursuant to 42 U.S.C. § 12133 and Section 504, 29 U.S.C. § 794a.

WHEREFORE, Plaintiff Gavin Class respectfully requests that the Court: a) declare that Towson's decision not to allow Mr. Class to participate in Towson's football program based on Towson's belief that he is disabled is discriminatory and violates Section 504 of the Rehabilitation Act and Title II of the ADA; b) issue a preliminary and permanent injunction ordering the University to allow Mr. Class to fully participate in Towson's football program; and c) award reasonable attorneys' fees, costs and any and all other relief deemed appropriate by this Court.

Respectfully Submitted,

_____
Andrew M. Dansicker (11765)
Law Office of Andrew M. Dansicker, LLC
11350 McCormick Road
Executive Plaza II, Suite 705
Hunt Valley, Maryland 21031
Telephone: 410-771-5668
Facsimile: 443-927-7390
adansicker@dansickerlaw.com

*Counsel for Plaintiff Gavin Class*

**EXHIBIT 1**



May 4, 2015

Andrew M. Dansicker, Esquire
The Law Office of Andrew M. Dansicker, LLC
11350 McCormick Road
Executive Plaza II, Suite 705
Hunt Valley, MD 21031

Office of the
General Counsel

Towson University
8000 York Road
Towson, MD 21252-0001

t. 410 704-4003
f. 410 704-3205

Re: **Gavin Class**

Dear Mr. Dansicker:

Your letter of March 19, 2015, requesting that Towson University reinstate your client, Gavin Class, to the University's football team, was referred to me as General Counsel for the University, and Donald DeVries, as counsel for the MedStar Sports Medicine program, which provides medical services to the University's athletic department. I am writing to advise that the University, with the advice of the MedStar medical professionals in its athletic department, has determined that while Mr. Class has made admirable strides in his recovery, he is unable to return to playing football safely and that no reasonable accommodation can be made to adequately protect him from potentially devastating health effects.

Towson University and the MedStar Sports Medicine professionals sincerely admire Mr. Class's outstanding efforts to recover from his heat stroke and his resulting liver transplant. They acknowledge that the medical providers at the University of Maryland believe Mr. Class's liver transplant is not an impediment to returning to football so long as certain precautions are taken. Mr. Class's risk of another heat stroke, however, is another matter. The sports medicine professionals believe that the risk of serious injury or death as a result of another heat stroke is too great to clear Mr. Class to play. As I am sure you are aware, Mr. Class's prior heat stroke led to a cascade of devastating complications, including multi-organ failure, which resulted not only in the need for a liver transplant, but also in a very complicated hospital course, several additional surgeries due to wound infections, and post-transplant lymphoproliferative disease that required chemotherapy.

Most importantly, Mr. Class remains at risk for another heat stroke. His prior severe heat stroke is a significant risk factor for future heat illness.



While some of his current transplant-related medical risks can be minimized with measures such as abdominal padding and medications, Mr. Class's risk of heat stroke is not capable of adequate prevention with any reasonable restriction or accommodation. Routine temperature monitoring alone would not adequately provide for his safety, and the sports medicine professionals cannot fashion a reasonable or practical precaution that would adequately protect Mr. Class from another serious heat related illness. The individuals involved in this decision agree that it would be irresponsible to permit Mr. Class to be exposed to another potentially catastrophic event.

      Please understand that representatives of the University and the MedStar Sports Medicine program have given this decision meticulous consideration, and their decision is unanimous. While these individuals recognize that this decision will be a major disappointment for Mr. Class, they genuinely have Mr. Class's best interests in mind.

Very truly yours,

*[signature]*

Traevena L. Byrd
General Counsel
Towson University

*[signature]*

Donald L. DeVries, Jr.
Goodell DeVries


cc:    Kari Kindschi, M.D.
        Louis Kovacs, M.D.
        Tim Leonard